WILSON et al. v. RUSHVILLE MINING & GAS CO.

(Supreme Court, Appellate Division, Fourth Department.    January 11, 1911.)

GAS (§ 13*)—CONTRACTS—ACTION FOR PRICE.

　　Where a contract required plaintiffs, who had exclusive control of natural gas, to furnish it at a certain pressure, and they refused, when the pressure became less than contracted for, to turn it off at the well until the proper pressure was restored as requested by defendant, and permitted inferior gas to flow into defendant's pipes, defendant was not liable for the gas used; that it sold such gas and received full pay from consumers being immaterial, since it could not avoid receiving the gas.

　　[Ed. Note.—For other cases, see Gas, Cent. Dig. §§ 5–9; Dec. Dig. § 13.*]

Appeal from Trial Term, Yates County.

　　Action by Milton J. Wilson and others against the Rushville Mining & Gas Company.    From a judgment for plaintiffs and from an order denying a new trial, defendant appeals.    Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, and KRUSE, JJ.

Darrin & Darrin, for appellant.

Scott & Fitch, for respondents.

WILLIAMS, J.    The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide event.

　　The action was brought to recover under a written contract for a quantity of natural gas furnished in December, 1908, and January and February, 1909.    The defense was that the contract provided that the gas should be furnished under a pressure of eight ounces, that in fact the pressure was much less than that, and that the gas furnished was of an inferior quality and of little or no value, and therefore the defendant should not be required to pay for it at the contract price. There was also a counterclaim set up for the expense of pumping water from plaintiff's gas well.

　　First.    There was no question but that during the three months in question the gas was furnished under a pressure much less than eight ounces.    The court so stated in ordering the verdict.    There was evidence from which the jury might find that gas, so furnished, was of an inferior quality, and was of little or no value to the consumer.    It was not so much a question of the quality of the gas, however, as its usefulness.    Under a low pressure sulphuric acid gas would escape into the room and smoke everything up that was set upon it.    There was evidence from which the jury might find that the plaintiffs had the entire control of the flow of the gas, and could shut it off and allow the well to rest for a while, and then the pressure would be restored to eight ounces, that the defendant could not stop the flow of the gas, and that it requested the plaintiffs to shut it off, but the plaintiffs neglected and refused to do so.    If therefore the defendant is right in its construction of the contract that it required the plaintiffs to furnish gas

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

under an eight-ounce pressure, the question of a right to recover for the gas furnished was one for the jury, and the verdict was improperly ordered. The defendant operated a natural gas plant in the village of Rushville, Yates county, N. Y., and distributed the gas to consumers in the village. It had one or more gas wells itself. The plaintiffs put a well down in the vicinity and very likely struck the same vein that supplied defendant's well. Thereupon the agreement in question was made between the parties. Among other things, it was agreed that the defendant should purchase gas from plaintiffs to use with that from its own wells, for the supply of the consumers in the village; the plaintiffs not agreeing to furnish any stipulated quantity at any one time, and reserving the right to shut off the gas at any time and allow the well to rest for such time as they deemed necessary. It was further agreed that each party should attach to the pipes from their respective wells an instrument known as a mercury pressure gauge, and that these gauges should at all times show an eight-ounce pressure; that the regulation and control of the gas from the plaintiffs' well should be so adjusted that its gauge should at all times show an eight-ounce pressure, and this gauge should in all things be the controlling and determining gauge as to the pressure to be used. This language seems to me to be plain and unequivocal and to permit the defendant to object to receiving or paying for any gas not furnished under the eight-ounce pressure. If gas at a less pressure was of inferior quality, and the plaintiffs had the exclusive control of the supply of gas, and the defendant requested it to be turned off so the well could rest until the required pressure was restored, and plaintiffs refused to comply with this request, but permitted the inferior gas to flow into defendant's pipes, then certainly the defendant was under no obligation to pay for such gas as was furnished. Respondents' counsel seems to claim that, inasmuch as defendant had the gas and sold it to the consumers and received full pay for it, the same as though it was up to the required pressure, it suffered no damage and should pay plaintiffs for the gas at the agreed price. Defendant could not avoid receiving the gas; plaintiffs alone had control of the supply, and refused, on request of defendant, to shut it off and rest the well. Under the contract the defendant, in view of these facts, which the jury might find from the evidence, was not liable to pay for the gas so received.

Second. The counterclaim was based upon the provision in the contract that the plaintiffs should at all times use all known means and appliances to prevent the waste of gas from their well, and the evidence offered by the defendant that water had gotten into the strata from which both parties' wells were supplied and prevented the flow of the gas at an eight-ounce pressure, and that it was the duty of the plaintiffs to share in the expense of pumping out this water and to pay the one-half thereof. The court held that the waste of gas referred to in the contract was waste after it got to the surface of the ground, and not waste resulting from water getting in the well. Very likely the court was right in its ruling. The language of the contract in this regard is found among the provisions relating to the flow of the gas through the pipes and does not seem to relate to any care of the wells

themselves. If it is necessary to determine this question now, I should say no evidence was given authorizing a verdict for the counterclaim. All concur.

KRUSE, J. (concurring). I agree to the reversal of the judgment and order; but I think the question of the quantity as well as the quality of the gas is involved. The defendant would necessarily get more gas, as it seems to me, when it was compressed and measured at a pressure of eight ounces, than if there was no pressure at all. In determining the amount of gas supplied, the difference between the actual pressure and that at which it was to be furnished should be taken into account, as well as the quality, if its quality was in fact affected by the low pressure.

I do not think it necessarily follows, however, from the lack in quality or compression of the gas, that the plaintiff is entitled to recover nothing.

---

LUST v. SYRACUSE RAPID TRANSIT RY. CO.

(Supreme Court, Appellate Division, Fourth Department. January 11, 1911.)

STREET RAILROADS (§ 114*)—COLLISION WITH ANIMALS OR VEHICLE—LIABILITY IN QUESTION.

In an action to recover for damages to furniture caused by a collision between a street car and plaintiff's vehicle, evidence held insufficient to sustain a verdict for the plaintiff.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 243–246; Dec. Dig. § 114.*]

Appeal from Onondaga County Court.

